Good morning Judge Fletcher and Judge Bivey and Judge Wilkin. My name is Mary Geddes. I am an assistant federal defender in Alaska and I am representing Michael McLoone. Michael McLoone was convicted in federal court of felon in possession after he had been convicted and sentenced in state court for related assault with a handgun. He was also convicted of other assaults committed on the same occasion on the same victim. In this case the appeal raises basically three guideline issues. From Rita and Gall we know that a correct calculation of the guideline range is the starting point for federal sentencing. That the calculation begins with a determination of the applicable range and then the determination of adjustments under parts B through G under chapter 5. This is required by guideline 1B1.1H. The court's calculation in this case was incomplete. In these respects, first it never conducted an individualized assessment of the defendant's argument that his criminal history was overrepresented by three points attributed to a 17-year-old misdemeanor warrant from Florida. Second, the court never adjusted the sentencing range under 5G1.3B1. That would be allowing credit for time served. Third, it never adjusted the range under 5G1.3 subsection B2 and that would be for basically concurrent sentencing. That guideline indicates concurrent sentencing shall be provided when the offense level has been adjusted by relevant conduct, which is the conduct in the related state case. Moreover, it appears in this case from the record that the district court actually thought it was imposing a guideline sentence. The court never said it was rejecting the guideline range as inadequate, never said that it was going to depart or vary in any way or give a sentence outside of the guideline system. Rather, the statement of reasons, when looked to for an interpretation of what the court did and said, that statement of reasons indicates and supports our position that the court actually thought it was giving a guideline sentence. There are no departures identified in the statement of reasons. There are no variances identified. And the court, in fact, imposed a sentence of 46 months, I think, on the basis of a belief that that was the correct guideline range. Now, 46 months is the, part of that runs concurrent with his sentence in Alaska, is that correct? The 46 months that he gave, he indicated a concurrent sentence of 22 months and a consecutive sentence of 24 months. That's what the court imposed. Okay, so 22, so to say he gave a sentence of 46 months is the total sentence, but of that, there's only 24 months that will be served in a federal facility. That was what he said. Do we have some reason not to believe him? No, no, no, I'm sorry. That, of course, is what he decreed. But the problem was that the court never did, as Rita Gall, Armstead, indicate it's required to do, which is to first begin with a correct calculation of the sentencing guideline range. It never made that determination. Had the court done that. Look, as I understand it, he took the 46, which was the upper limit recommended by, calculated by the PSR and that the government recommended. Yes. So he gave you the upper limit of that guideline. I know that you disagreed with the way that they got there, but that was the way that the probation office calculated it. It took the 46 months and subtracted, if you subtract the 36 months for the assault charge in Alaska, that would have given him a possibility of 10 months, is the way that I calculated this, that he might have attacked on as a consecutive sentence. I gave him 24, so obviously he's got another 14 months in there that he thought were justified in addition to the 10 that he would have gotten otherwise. Is my math right here? Am I sort of in the ballpark? You are in the ballpark if, in fact, the defendant should have been in criminal history category 5. Right. It was based on certain assumptions, but that came out of the PSR. I mean, there was some, the district court didn't make all of that up. He was working off of recommendations by both the United States and by the probation office. The PSR never did make an adjustment in the guideline range calculation for the time served, which was 9.5 months at that point or 10 months, rounding it up. It never, that particular adjustment, B1 under 5G1.3, was never addressed in the PSR. So there is no adjustment under B1 as is required by the guidelines. But that doesn't really have any bearing on the initial calculation of the guideline sentence. Well, as I understand it, Your Honor, is that the, according to Armstead, there are two parts to the correct calculation of the guideline. And first is the determination, basically, of the applicable guideline range. But then the second step has to be, according to, as required by 1B1.1 subsection H, the second part of the calculation has to be the determination of the appropriate adjustments. And that includes 5G1.3, B1, and B2, which is the credit for time served as well as the concurrent. But the 9.5 months he was served, that was already, that isn't going to be in addition to the 3 years or 5 years he's getting in Alaska. That's part of that sentence, right? The time served that would not be credited by the Bureau of Prisons. The time he already spent is the 10 months. Well, how long is he going to spend in Alaska prison? 36 months plus the additional. Right, so 36 months on the assault charge plus the additional for the bad and the misdemeanor and all of that. That's right. Well, if we take that 36 months out of there, that accounts for the time served. If you take the, but the court did not make that specific to account 1. The court did not make it specific to account 1. But he gave you full credit for the 3 years assessed in Alaska State Court for the assault. What more was he supposed to credit? He was supposed to, the correct sentence, I think, under criminal history category 5, and I argue he should have been considered to be in 4 because of an over-representation issue. That would have been 10.5 months of consecutive time. I think the problem here is that without the careful attention to the guideline and the determination that the court had to make, the problem is that we really have a result-oriented sentencing. The court really thought it had done the guideline calculation right, and it had not. It had not because it never adjusted in the report. The PSR reflects that no adjustment was proposed, and the court certainly made no such adjustment. And then secondly, what happened was that the court never considered, I don't think it really understood that basically the current time was mandated by the guideline. Certainly that's not reflected in the language that the court used. It never recognized that it was in any way departing from the guideline or varying the guideline sentence. It said it was imposing a guideline sentence. And from the language that the court uses in articulating its rationale, it basically says, well, there's a whole bunch of different ways we can get here. It really did sound like a result-oriented sentencing process rather than a careful consideration of the guideline issues. I'd like to reserve the remainder of my time. Thank you, Mike. Good morning, Your Honors. I'm Craig Warner for the government. At the sentencing hearing in this case, what Judge Beislein was faced with was a serial batterer of women and an anomalous effect in the guidelines, specifically that the standard concurrent sentence provisions of the guidelines would result in the defendant serving no actual federal time for his federal crime, which was felony weapons possession, precisely because he had used one of those weapons he illegally possessed to assault his girlfriend. Judge Beislein recognized that he had an issue with respect to consecutive versus concurrent time. He requested specific input on that issue from the parties. He received very specific input on that issue, both from the defense and from the government. It was discussed on the record. And there's no indication from the record, in fact, there's every indication on the record that Judge Beislein did understand what the guideline issues were here. And after discussing it, it's very clear, I think, from the record, that what the district court did was base its final sentence on substantive 18 U.S.C. 3553A analysis. What would you point to to indicate that the judge understood what the guideline sentence was? Thank you, Your Honor. I think that's definitely the central question here. Let me emphasize a few points. The appellant really raises two distinct issues with respect to the guidelines. The first is the basic argument of 5G1 with respect to basic consecutive versus concurrent sentencing. The second is the proposed 10-month credit pursuant to 5G1.3b1. I'll address the basic consecutive versus concurrent issue first. Three basic things. First, the appellant, the defense counsel, very specifically pointed out the relevant guideline provision with respect to consecutive versus concurrent time to the district court. I could point to various quotes from the record. Looking at docket 50 on page 19 and page 21, the defense counsel notes that the sentencing commission, I'm quoting, the sentencing commission says that when a person has, in essence, already been convicted for the kind of conduct that Mr. McLuhan's been convicted, that the court shall, and that's language, that's the kind of language we call directive or mandatory, the court shall make the sentences concurrent. So the defense counsel in this case very clearly knew what her strongest argument for concurrent sentencing was. It's that the, and that argument clearly was that the guidelines direct that the court use concurrent sentencing. Of course, the guidelines themselves are advisory, so that's not the end of the conversation. But the defense counsel clearly knew what her strongest argument was, and she placed that right in front of the judge to be considered. The government did the very same thing. On page 14 of docket 50, the transcript, the government acknowledges the effect of the guidelines. Quote, a month's long act of illegal firearms possession should not be entirely conflated with a few minutes of violence in a way that ultimately releases the defendant from any responsibility for the possession. The guidelines do suggest concurrent sentencing may be appropriate when there is an enhancement for behavior that is elsewhere charged. That is the case here. The government doesn't deny that. But to employ that truism here, aside from the fact that the guidelines are advisory, to employ that truism here would have a very paradoxical and, I think, unintended result. So it's very clear, I think, from the record, that what the government did is acknowledge the effect of 5G 1.3, acknowledge that that was the strongest argument that the defense brought, but then transition from that to an 18 U.S.C. 3553A argument. And does the judge say anything to indicate that he didn't understand that or didn't agree with that or that he did agree with it? Yes, Your Honor. In fact, he's very clear that he does understand it. And I would refer the court to Excerpt of Record 41. It can also be found in the government's brief, page 15 and 16, the quote from the district court, Judge Beislein, as he evaluates 5G 1.3. I look at 5G 1.3. It tells us that we do. We shall not sentence you consecutively if two things occur. If there's a term of imprisonment resulting from another offense that is relevant conduct, and that certainly applies, and it was a basis for an increase in the offense level for the instant offense. And that's a direct quote from the district court. So I really don't think that there's any defensible case that Judge Beislein did not understand the basic guideline provisions with respect to concurrent and consecutive sentencing in this case or how they applied to the facts that he was facing. He received input from both defense and government on that point. Defense and government essentially agreed as to what that effect was. It was a good argument for the guidelines themselves were a good argument for the defense, a bad argument for the government, but the government acknowledged that and argued pursuant to 18 U.S.A. 3553A. And then the court, I think, directly and very accurately assessed what the effect of the guidelines, if they were directly applied, would be. So I don't think there's any question the court understood the guidelines with respect to Issue 1 that the appellant has raised. Did the district court say anything about whether it was departing or whether this was a variance?  And I think that's something that we have to deal with. But the issue is the sentence that he imposed, a departure or a variance or something else? The government's position is that it's definitely a variance, Your Honor. It clearly varies from what the guidelines sentence would be. If we were to disagree with you and think it was a departure, was there a failure to give notice? No, Your Honor. Again, the government's position is that it was a variance, but even if you disagreed, I think the measures that the court took to make sure that the court could receive input from the defense were very thorough Did the court say, I'm considering departure and you ought to know that? Again, he didn't use that language, but I think the essence of what was under consideration was very clear. He solicited input specifically with respect to the issue of consecutive versus concurrent sentencing. And the guidelines, as we've said, are very clear that the guidelines call for concurrent sentencing. So by saying that he wanted input on that issue, it's very clear that he was considering varying from those guidelines. I'd like to very briefly address the second issue that the appellant raised, which is the specific 10-month credit that was requested pursuant to 5G1.3b1. This also was clearly placed before the district court. In fact, I note that the appellant in his brief actually affirms that the district court, quote, was alerted, and that's on page four of the appellant's reply brief, was alerted to the 5G1.3b1 issue. Secondly, we talked about Armstead. The court's directive in Armstead is to either give the credit or explain why it declines to apply that sentencing adjustment. The court in Armstead, this court, also expressed that its motivating concern in Armstead was concern for duplicative punishment. And the court in Armstead was very concerned that it did not appear that the district court in Armstead had considered that issue. Here, it's all over the record in multiple, multiple places. Excerpt of record 41-33 that Judge Beisling was very concerned about that issue. He repeatedly says, I intend to make certain that you are not punished duplicatively. So the concern of this court in Armstead that that issue was not considered by the district court should not be an issue here. And third, the court in Armstead was also very concerned that there was no indication of 18 U.S.C. 3553A analysis in that case. Here, there is substantive 18 U.S.C. 3553A analysis. In fact, it's extensive analysis. It's very clear that the district court considers all of the 18 U.S.C. 3553A issues, specifically the personal characteristics of the defendant, the appellant, and that those are the motivating factors behind his substantive sentence. I see that my time has expired. Getting back to something that was mentioned earlier, didn't the judge give the defense attorney some time to consider and delay the sentencing until the afternoon and then ask whether there had been enough time? Yes, with leave to answer. Yes, Your Honor. The court actually offered the defendant, the defense counsel, up to two additional days to offer input on all of these issues. And the defense counsel was very clear that she was prepared and could express her perspective and offer the court what she wanted to consider that afternoon. Thank you, Your Honor. Thank you, counsel. Ms. Geddes, I think you've reserved some time. Judge Wilkins' question, I think, brings to mind part of the confusion that reigned in that hearing. A lot of Judge Beistlein's concerns had to do with the operation of the state's sentencing, the state's sentence. It made references in his sentencing remarks to trying to determine whether it was a presumptive sentence or not, trying to determine whether or not the defendant was parole eligible. So a lot of his questions had to do, prior to that final hearing, had to do with basically what was going to happen to the defendant with respect to the service of his sentence. How long would he actually be in custody? And the discussion about whether or not there was going to be consecutive time imposed, I think, was very confusingly framed in many respects because the government had argued, completely apart from a guideline analysis, about the court's ability statutorily to impose consecutive time rather than concurrent. So the problem was that, I think, in terms of tracking what the court's calculation of the sentence was, it was very, very difficult to ascertain how the court was proceeding. It wasn't like that kind of bifurcated sentencing proceeding where a district court says, first we're going to address the guideline-related issues, and then I will take up the 3553A factors and determine the interplay there. With respect to the B1 issue, that is credit for time served. In fact, there is nothing in the record that indicates that Judge Beislein understood that the guidelines actually required that such credit be given and that not giving it constituted a departure into the guidelines. There's no reference, no word, depart, bury, variance, departure, nothing. Disagreement with the guidelines, nothing is articulated in the record that suggests that he was given a non-guideline sentence. He didn't understand that he had to complete that guideline calculus. He failed to do so. Therefore, the sentence should be vacated and the matter remanded. I think I'm out of my time. Thank you. We thank both counsel for the argument. United States v. McClune is submitted.
judges: Wilken, Fletcher B. , Bybee